UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY         :     Civil Action No.: 2:09-CV-04733
COMMISSION,                          :     (ES) (CLW)
                                     :
          Plaintiff                  :
                                     :
     v.                              :
                                     :
MITSUWA CORPORATION, d/b/a           :
Mitsuwa Marketplace,                 :
                                     :
          Defendant.                 :
-------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF EEOC'S MOTION TO EXCLUDE THE LIABILITY COMPONENT OF THE EXPERT OPINION OF DR. CHARLES J. MULLIN**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Jeffrey Burstein
Senior Trial Attorney
One Newark Center, 21st Floor
Newark, N.J. 07102
Email: jeffrey.burstein@eeoc.gov
Tel: (973) 645-2267
Fax: (973) 645-4524

## TABLE OF CONTENTS

**RESPONSE TO MITSUWA'S FACTUAL RECITATION** ……………………………………………1

**ARGUMENT** ……………………………………………………………………………………………4

**I.    DR. MULLIN'S OPINIONS AND TESTIMONY ON THE ISSUE OF LIABILITY ARE INADMISSIBLE UNDER  DAUBERT BECAUSE THEY ARE PRIMARILY BASED ON UNSUPPORTED SPECULATION** ……………………………………………………………………4

**II.   THE TWO ANALYSES PERFORMED BY DR. MULLIN ARE INADMISSIBLE BECAUSE THEY DO NOT FIT THE ALLEGATIONS IN THE CASE AND/OR BECAUSE THEY WILL CONFUSE OR MISLEAD THE JURY**……………………………………………..7

   a.   **The Year-by-Year Compensation Analysis** ……………………………………………7

   b.   **Controlling for Starting Pay** ……………………………………………………………9

**CONCLUSION** …………………………………………………………………………………....10

**TABLE OF AUTHORITIES**

**CASES**

Bazemore v. Friday, 478 U.S. 385 (1985) ………………………………………………4-5

Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384 (D.N.J. 2009) ...............7

Calhoun v. Yamaha Motor Corp.. 350 F.3d 316 (3d Cir. 2003) …………………………….....5

Capaci v. Katz & Besthoff, Inc., 711 F.2d 647 (5th Cir. 1983) ……………………………………8

Eldredge v. Carpenters, 833 F.2d 1334 (9th Cir. 1987) ………………………………………...7

Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69 (3d Cir. 1999) …………………………...6

Gutierrez v. Johnson & Johnson, Inc., 01-5302 (NHP), 2002 WL 34717245 (D.N.J. Aug. 13, 2002)………………………………………………………………………………………….7-8

In re Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994)…………………………………..6

Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525 (D.N.J. 2001) ……………………….......5

Montgomery Cty. v. Microvote Corp., 320 F.3d 440 (3d Cir. 2003) …………………………...5

Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000) …………………………………………..5

Palmer v. Shultz, 815 F.2d 84 (D.C. Cir. 1987) ………………………………………………...6

Thomas & Betts v. Richards Mfr. Co., 342 Fed. Appx. 754 (3d Cir. 2009) ………………………4

**RULES**

Fed. Rule of Evid.702 ………………………………………………………………………..9

Fed. Rule of Evid. 403…………………………………………………………………………..9

**RESPONSE TO MITSUWA'S FACTUAL RECITATION**

Mitsuwa's factual discussion in its memorandum of law in opposition to EEOC's motion essentially rehashes at length Dr. Mullin's critiques of Dr. Vekker's initial report, studiously ignoring (1) Dr. Vekker's response to all of these assertions in his rebuttal report (Exh. D to June 18, 2012 Burstein Declaration in support of EEOC's motion), and (2) Dr. Mullin's deposition testimony in which, as detailed in EEOC's initial brief (pp. 2-6), he freely admitted that he could have applied his suggested alternate methods of analyzing the compensation data but, with two narrow exceptions, did not do so. Moreover, this extended discussion regarding alleged deficiencies of Dr. Vekker's report avoids the question presently before the Court. While Mitsuwa will have every opportunity to challenge Dr. Vekker's opinions at trial, the issue in this motion is whether <u>Dr. Mullin's</u> report, which affirmatively concluded that the relevant data does "not support the allegation that Hispanic workers were discriminated against with regards to pay" (Burstein Dec., Exh. B, Mullin expert report (hereafter "Mullin report), p. 15), meets the <u>Daubert</u> prerequisites of reliability and relevance. As detailed in EEOC's initial brief, it does not. Therefore, Mitsuwa's factual recitation in its brief, discussed below, will not be responded to at length, as it is largely comprised of summarizing Dr. Mullin's criticisms of Dr. Vekker, which already were addressed in Dr. Vekker's rebuttal report.

First, Mitsuwa infers that Dr. Vekker's report was flawed because the data he analyzed—based on personnel documents produced by Mitsuwa itself in discovery—was "incomplete" (Mitsuwa brief, hereafter "Def. brf.," at 2). But as Dr. Vekker explained both in his initial and rebuttal reports, recognizing that the Mitsuwa-produced employee data was not complete in certain areas, he utilized a series of controls well-established in labor economics to account for factors that might have provided legitimate, non-discriminatory explanations for the wage differentials between Hispanic and non-Hispanic employees (<u>e.g.</u>, age as a proxy for

1

labor market experience, to account for the fact that the Mitsuwa application forms only had employees list their three most recent jobs). Even when such controls were applied, statistically significant wage differentials based on national origin existed. Notably, Dr. Mullin, in preparing his report, did not find it necessary to examine any data other than that which formed the basis of Dr. Vekker's report.

Next, Mitsuwa attempts to make much about the alleged inconsistency of Dr. Vekker aggregating the compensation data for his liability determination, but analyzing damages on a year-by-year basis (Def. brf. at 3, 5, 6). According to Mitsuwa, this contrasts with the allegedly appropriate year-by-year analyses of both liability and damages done by Dr. Mullin. But this ignores the obvious differences between (1) performing a regression analysis, through application of controls accounting for legitimate reasons for salary disparities, that required a sufficiently large sample size to achieve statistical significance, to determine whether there was a <u>pattern throughout the liability period</u> of compensation disparities; and (2) determining losses for the individual Hispanic employees in EEOC's class, many of whom only worked for Mitsuwa for short periods of time, which damage determination did not require any regression analysis, and for which statistical significance (and therefore sample size) was not an issue.[1]

On this subject, Mitsuwa further argues that Dr. Mullin's year-by-year approach was correct because Dr. Vekker's aggregated liability analysis resulted in "employees who were employed by Mitsuwa in more than one year [being] counted multiple times in his analysis" (Def. brf. at 3; see also <u>id.</u> at 15-16). This argument is senseless. In his year-by-year analysis, Dr. Mullin himself also necessarily analyzed employees who worked multiple years for Mitsuwa and thus were "counted multiple times"; for example, the compensation of a single employee with a tenure at Mitsuwa from 2006 through 2010 would be included in five separate analyses performed by Dr. Mullin under his year-by-year approach.

---

[1] See pp. 7-8 <u>infra</u> for a discussion of cases recognizing the need for aggregated data when conducting a regression analysis that requires statistical significance.

Next, Mitsuwa asserts that Dr. Mullin pointed out allegedly significant variables missing from Dr. Vekker's analysis (Def. brf. at 4-5). This flatly ignores Dr. Mullin's deposition testimony that he did not perform any analyses himself to apply these supposedly missing variables even though he could have done so, and that he had no idea whether accounting for such variables would have any effect on Dr. Vekker's findings of national origin-based compensation disparities (see EEOC initial brief, pp. 3-6). Moreover, this section of Mitsuwa's brief makes a number of assertions that already have been pointed out as being erroneous. Contrary to Mitsuwa's claim (Def. brf. at 4-5), Dr. Mullin was wrong in stating that Dr. Vekker did not account for prior experience as a butcher/meat handler; as stated by Dr. Vekker in his rebuttal report (p. 4, n.11), <u>no</u> applications of hourly employees who listed such experience were used to construct the database in this case. Further, contrary to Mitsuwa's discussion of this issue (Def. brf. at 5), Dr. Vekker did not control for pay at previous employers not only because this could reflect discrimination in the labor market, but also because the Mitsuwa manager responsible for setting starting salaries during most of the liability period testified at deposition that this was not a factor in starting pay (Vekker rebuttal report, p. 4). And Dr. Mullin conducted no analysis using prior pay as a control despite his ability to do so (Mullin deposition, Exh. C to Burstein Declaration, at 88:11-21, 89:2-15).

Next, Mitsuwa asserts that Dr. Mullin noted "certain flaws" in Dr. Vekker's methodology (using logarithms, removing rehires form the starting pay analysis, not accounting for missing education, etc.) (Def. brf. at 5). As detailed on pages 5-6 of EEOC's initial brief, none of these critiques have any merit. And again, strikingly absent from Mitsuwa's brief is a response to EEOC's critical point on these issues, namely that Dr. Mullin freely admitted his failure to perform any alternative analyses correcting these "flaws" even though he could have, and that he had no idea if doing so would have affected the findings of compensation disparities.

3

Finally, Mitsuwa asserts that Dr. Mullin ran an analysis controlling for starting pay--which, as detailed in EEOC's initial brief (pp. 7, 13, 14), erased any disparities originating with Mitsuwa's setting of starting salaries--in order "to see whether, after controlling for starting pay, there was statistical evidence that Mitsuwa discriminated against Hispanics in pay raises" (Def. brf. at 6). Unexplained by Mitsuwa is why Dr. Mullin did not examine this issue directly, by simply analyzing the raise determinations themselves instead of the far more convoluted effort of analyzing compensation as a whole and including starting pay as a control.

## ARGUMENT

### I. DR. MULLIN'S OPINIONS AND TESTIMONY ON THE ISSUE OF LIABILITY ARE INADMISSIBLE UNDER <u>DAUBERT</u> BECAUSE THEY ARE PRIMARILY BASED ON UNSUPPORTED SPECULATION

The first portion of Mitsuwa's legal argument (Def. brf. at 7-14) rests on three central assertions: (1) that the Third Circuit has a liberal standard for admission of expert testimony; (2) that <u>Bazemore v. Friday</u>, 478 U.S. 385 (1985), and its progeny, which concern expert statistical regression analyses in compensation discrimination cases (the setting here), did not involve <u>Daubert</u> motions; and (3) that Dr. Mullin's report is fully admissible because it constitutes a critique of Dr. Vekker's analysis. None of these arguments is persuasive.

First, each of the cases relied upon by Mitsuwa for the proposition "that the standard for the admission of expert testimony is a liberal one" (Def. brf. at 8) arise in the context of a <u>Daubert</u> motion challenging the <u>qualifications</u> of an expert. <u>See, e.g.</u>, <u>Thomas & Betts v. Richards Mfr. Co.</u>, 342 Fed. Appx. 754, 761 (3d Cir. 2009) ("We have interpreted Rule 702's qualification requirement liberally"). But EEOC is not challenging Dr. Mullin's qualifications. Rather, at issue are the second and third prongs of the Rule 702 analysis, reliability and fit. And the Third Circuit requires a district court to conduct a thorough review of the reliability and fitness prongs, utilizing as "a starting point" for the reliability determination an eight-

4

factor test that necessitates a searching analysis. Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 322 (3d Cir. 2003). If this reliability analysis shows that the expert's opinion is based on "unsupported speculation," such as where the expert does not test his/her theory to the facts of the case, such opinion is inadmissible. Oddi v. Ford Motor Co., 234 F.3d 136, 158 (3d Cir. 2000). See also Montgomery Cty. v. Microvote Corp., 320 F.3d 440, 448-449 (3d Cir. 2003); Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525, 539-541 (D.N.J. 2001) (same). As detailed in EEOC's initial brief (pp. 7-10), that is precisely the setting here. With two limited exceptions discussed in Point II below, Dr. Mullin did not test whether utilization of his suggested methods of analyzing the Mitsuwa compensation data that differed from Dr. Vekker's would have any effect on the findings of compensation disparities based on national origin. Therefore, despite the fact that Dr. Mullin is qualified, his report as to liability is not reliable under Daubert and should be excluded.

Second, Mitsuwa makes much of the fact that the Supreme Court decision in Bazemore and its progeny cited in EEOC's initial brief did not involve exclusion of experts under Daubert (Def. brf. at 8-12). This is true, but beside the point. Bazemore, and the cases flowing therefrom, while not concerning Daubert motions, involved the precise type of expert opinion given by Dr. Mullin, a defense expert opinion concerning a regression analysis of compensation in a discrimination case. The Bazemore Court reversed a decision for defendant largely based on testimony of a defense expert in a compensation discrimination case who testified "that many factors go into making up an individual employee's salary," but who "made no attempt—statistical or otherwise—to demonstrate that when these factors were properly organized and accounted for," the race-based disparities would disappear. 478 U.S. at 420, n.14. Following Bazemore, courts have discounted the value of defense experts who attempt to rebut a discrimination plaintiff's regression analysis "by mere conjectures or assertions, without introducing evidence to support the contention that the missing factor" not

5

analyzed by plaintiff's expert provided a legitimate explanation for the disparities. Palmer v. Shultz, 815 F.2d 84, 101 (D.C. Cir. 1987). (See also cases cited and discussed on pp. 8-9 of EEOC's initial brief.) Such "conjectures" regarding alleged deficiencies in Dr. Vekker's report are precisely what constitute the bulk of Dr. Mullin's report, given Dr. Mullin's failure to apply his methodologies to the relevant data. And the Third Circuit has squarely held that the reliability prong of Daubert is not met where "an expert opinion is based on speculation or conjecture." Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir. 1999). See also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (expert opinion inadmissible if based on "unsupported speculation"; expert must have "good grounds" for his belief). Such an expert opinion in the setting of a regression analysis of compensation disparities is just as much subject to the Daubert prerequisite of reliability as are expert opinions found to be inadmissible under Daubert in the more typical setting of tort cases.

     In sum, Mitsuwa's discussion of the absence of Daubert cases in the context of a defense expert report concerning a regression analysis of compensation practices is a quintessential distinction without a difference. Just as an expert report based on untested speculation is unreliable and thus inadmissible in a tort setting, so too is this true for an expert report in an employment discrimination case like this matter.

     Finally, Mitsuwa emphasizes that the portion of Dr. Mullin's report concerning liability is admissible because it "calls into question the persuasiveness of [Dr. Vekker's] statistical analysis as proof of discrimination," and thus supposedly constitutes a fully admissible challenge to a plaintiff's expert opinion (Def. brf. at 13). But this too misses the point. EEOC is not arguing that at trial Mitsuwa will be unable to challenge Dr. Vekker's opinions; of course it can. However, the liability section of Dr. Mullin's report goes far beyond that; it purports to support the affirmative conclusion that a proper statistical analysis of the Mitsuwa compensation data shows results that "are not consistent with a pattern of decision making

6

adverse to Hispanic workers and do not support the allegations of pay discrimination against Hispanic employees" (Mullin report, p. 15).

Moreover, that most of Dr. Mullin's report is framed as a critique of Dr. Vekker's does not transform otherwise inadmissible "speculation or conjecture"— i.e., Dr. Mullin's suggestions of other ways to analyze the compensation data without having conducted such tests himself – into a reliable and admissible opinion. Nothing in Daubert or its progeny remotely supports the proposition that the prerequisites for the admissibility of expert opinion testimony only apply to a plaintiff's expert. Rather, Daubert applies equally to a defendant's expert report and/or testimony challenging a plaintiff's expert's opinions. See, e.g., Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 448-52 (D.N.J. 2009) (Judge Wolfson granting Daubert motion by plaintiff to exclude testimony of two defense experts who critiqued plaintiff's experts, in part because of their failure to test their hypotheses that challenged plaintiff's experts' conclusions).

**II. THE TWO ANALYSES PERFORMED BY DR. MULLIN ARE INADMISSIBLE BECAUSE THEY DO NOT FIT THE ALLEGATIONS IN THE CASE AND/OR BECAUSE THEY WILL CONFUSE OR MISLEAD THE JURY**

a. **The Year-by-Year Compensation Analysis**

As seen in the cases cited on pages 12-13 of EEOC's initial brief, not only does the year-by-year liability analysis conducted by Dr. Mullin not fit the allegations of EEOC's Complaint, which alleges that "[s]ince at least 2005, Mitsuwa has engaged in a pattern or practice" of compensation discrimination against Hispanics (Complaint, ¶7(a), emphasis added), in discrimination cases courts have held that "aggregated data are the most probative" on the issue of whether there is a discriminatory employment practice, in contrast to data broken down into small year-by-year components (what was done by Dr. Mullin). Eldredge v. Carpenters, 833 F.2d 1334, 1341, n.7 (9th Cir. 1987). See also Gutierrez v. Johnson &

7

Johnson, Inc., 01-5302 (NHP), 2002 WL 34717245 at *4-*5 (D.N.J. Aug. 13, 2002) (in Title VII case involving statistical analyses, Judge Politan rejected defendant's argument about disaggregating the relevant data, as "all things being equal, large samples are more reliable than small ones").

In supporting Dr. Mullin's approach, Mitsuwa argues that "[i]f the evidence shows that in some years there was no pay differential, this would serve to disprove" EEOC's pattern or practice allegation (Def. brf. at 15). But Table 1 of Dr. Mullin's report (p. 11) shows that even after controlling for factors that could provide legitimate bases for pay differentials, Hispanic employees were paid between 4.5% and 8.3% less than non-Hispanics holding identical jobs. As Dr. Mullin himself admitted at deposition, those disparities are not "trivial." (Burstein Supplemental Declaration, Exh. A, Dr. Mullin deposition transcript, p. 134, ln. 15).

On this point, Mitsuwa further argues that Dr. Mullin's year-by-year approach better captures changes in pay decisions "in response to economic circumstances." (Def. brf. at 15). Utterly unexplained, however, is why changed economic circumstances should have any impact on disparities in pay for the identical job between Hispanic and non-Hispanic employees.

Finally on this issue, Mitsuwa argues that Dr. Mullin's approach somehow avoids the alleged "problem" of individuals "who were employed for multiple years [being] counted multiple times." (Id.) This makes no sense. As previously noted, in his year-by-year analysis, Dr. Mullin himself also necessarily included employees who worked more than just one year for Mitsuwa; thus these employees were "counted multiple times" by Dr. Mullin too.

The true reason for the year-by-year approach taken by Dr. Mullin is the same as that discussed by the court in Capaci v. Katz & Besthoff, Inc., 711 F.2d 647, 654 (5th Cir. 1983): "an unfair and obvious attempt to disaggregate that data to the point where it was difficult to demonstrate statistical significance," because by "fragmenting the data into smaller sample

8

groups, the statistical test become less probative." Under Rules 702 and 403, Mitsuwa should not be allowed to mislead the jury by arguing that the disparities in compensation, recognized by Dr. Mullin himself as being "non-trivial," should be ignored because of the lack of statistical significance that is a direct result of the small sample sizes examined in his year-by-year analyses.

    b.  **Controlling for Starting Pay**

In its initial brief (pp. 13-14), EEOC argued that the portion of Dr. Mullin's report in which he controlled for starting pay – meaning that national origin-based disparities caused by discrimination in the setting of starting salaries would be eradicated – should be found to be inadmissible under Rule 702 because of lack of fit, as discrimination in starting pay has been part and parcel of EEOC's claim throughout this litigation. EEOC further argued that this portion of the report is inadmissible under Rule 403, as eliminating evidence of starting pay discrimination would be highly misleading in a pay discrimination case. Mitsuwa's response to EEOC's arguments is remarkable; it seemingly asserts that a finding that there has been no discrimination in granting raises would absolve it from liability, as this could "lead to the conclusion that the only possible discrimination was in setting starting pay." (Def. brf. at 19). However, just because EEOC's compensation discrimination claim in this case encompasses both starting and overall pay in no sense gives Mitsuwa a free pass if the "only" national origin discrimination it has practiced is in the awarding of starting pay and not raises. For even if Mitsuwa persuades the jury "that the only possible discrimination was in setting starting pay," Title VII obviously would be violated.

Moreover, apart from the plainly erroneous assertion that EEOC needs to prove discrimination in all phases of compensation awards in order to prevail, if the purpose for Dr. Mullin's control was to examine whether or not there was national origin discrimination in employee raises, the obvious way to do this is not to examine overall compensation after

controlling for starting pay but rather to directly examine the raise decisions themselves as a whole (not done by Dr. Mullin).

## CONCLUSION

For the foregoing reasons and those set forth in EEOC's initial brief, EEOC respectfully requests that the Court exclude as inadmissible the portion of Dr. Mullin's expert report regarding liability and any testimony thereon.

Dated: July 13, 2012

Respectfully submitted,
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

 s/ Jeffrey Burstein
Jeffrey Burstein
Senior Trial Attorney
One Newark Center, 21st Floor
Newark, N.J. 07102
tel: (973) 645-2267
e-mail: jeffrey.burstein@eeoc.gov